## ATTACHMENT C-AFFIDAVIT

## INTRODUCTION

1.      I, Stephen Feuerstein, being duly sworn, depose and state that: I am a
Detective with the Billings Police Department assigned to the Bureau of Alcohol,
Tobacco, Firearms and Explosives (ATF) assigned to the Billings, Montana Field
Office as a Federally Deputized Task Force Officer.  I have been so employed since
January of 2008.  During the past 27 years, I have worked as a patrol officer, K-9
handler, Detective and ATF Task Force Officer (TFO).  During the past 27 years I
have investigated nearly all crimes that can be committed.  During the past 11
years I have worked specifically on drug and firearms investigations and have
participated in dozens of drug and firearms investigations to include arrests and
searches.  I am familiar with the facts and circumstances set forth herein as a result
of my personal participation in this investigation as well as my review of official
reports and records and conversations with other law enforcement officers as more
fully described below.

2.      My duties and responsibilities as a TFO with ATF include
participating in the investigation and prosecution of persons who violate federal
firearms laws.  As a result of my training and experience, I am familiar with the
federal firearms and narcotics laws.  I know that in accordance with Title 18,
United States Code, Section 922 (g)(2), it is unlawful for an individual who has is a

1

fugitive from justice to own or possess a firearms or ammunition.  I know that in accordance with 18 USC 922 (g) (9), it is unlawful for any individual who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.  I know that in accordance with 18 USC 922 (g) (3), it is unlawful for any person who is an unlawful user of or addicted to any controlled substance.

3.     I know from my training and experiences as an ATF TFO, and particularly from my participation in the execution of search warrants authorizing the seizure of firearms, that those who own and possess firearms and ammunition generally maintain them on their person, in their residence and motor vehicles, and in places where they store their personal property.  Owners of firearms generally maintain and preserve them over a long period of time because firearms are somewhat expensive, there are at times administrative delays in buying them, and firearms do not easily deteriorate.  In my experience, firearms are not depleted through use, nor are they exchanged soon after being obtained.  Firearms are like expensive tools, which their owners keep and maintain over long periods of time. Owners of firearms generally keep firearms and ammunition in and about their home or vehicles because it permits easy access in order to maintain them and

provides an environment where the firearms will be secure from theft and safe from corrosion.

4.     I know through my experience that in the immediate area where individuals store their firearms and ammunition, there will be evidence of the individual's exercise of dominion and control over the firearm and/or ammunition. For example, if a firearm and/or ammunition were stored in a particular dresser drawer, the drawer would also routinely contain items such as documents, cards, letters, photographs, and physical objects such as articles of clothing which will identify the specific individual or individuals that exercise dominion and control over the particular area.

## PROBABLE CAUSE

5.     On January 15, 2019, a call was made to the Yellowstone County Sheriff's Office from the principal of the Lockwood elementary school principal. The principal reported that upon the counselor making phone contact with Christopher Lee MINOR, to discuss problems with MINOR'S children, MINOR became abusive and threatening over the phone.  The principal requested that due to MINOR'S behavior over the phone, and threats, the School would like the Sheriff's Office to issue a no trespass warning to MINOR that would not allow MINOR to enter the school property.

6.     Yellowstone County Sheriff's Office, Deputy Poe along with Sergeant Taylor responded to the MINOR residence, 1385 Highway 87 East, Trailer # 37, Billings, MT.  Upon arrival Deputy Poe and Sgt. Taylor reported Mr. and Mrs. MINOR were at the residence and the Deputies made contact with both.  Deputies reported that Christopher MINOR was agitated and immediately advised that the deputies were trespassing on the property.  Mrs. Minor recorded the contact on her cell phone while MINOR refused to cooperate with the request for name and date of birth for identification.

7.     Deputies reported that MINOR made threats to "kick Deputy Poe's ass if Deputy Poe was not wearing a gun or badge."  MINOR never fully cooperated with the Deputies and when Deputy Poe wrote down the license plate number of the vehicle in front of the residence so that Deputy Poe could attempt to properly identify MINOR, MINOR continued his abusive, aggressive and threating behavior.  The Deputies left the residence at that time.

8.     Deputy Poe utilized the information obtained from the Lockwood School and the contact to locate Christopher Lee MINOR'S Facebook page online. Deputy Poe reported that the subject in the Facebook page matched that of MINOR and that the Facebook Page listed MINOR as being from the Roachdale, IA area. Deputy Poe made contact with the Sheriff's Office in Roachdale, IA, and they were able to provide Deputy Poe with all the personal identification information

4

for MINOR. Deputy Poe then learned that MINOR was a wanted felon out of the

state of IA for felony theft charges dating back to 2006. Deputy Poe also reported

learning that MINOR was also a wanted felon out of the state of CA for felony

Child Abuse dated 2011. Deputy Poe had the Sheriff's Office secretary place an

officer caution into the local jacket created for MINOR due to his aggressive

behavior and threats.

9.      On April 2, 2019, Deputy Sanderlin and Deputy Simpson were called

to respond to the MINOR residence on a report filed with the Montana Department

of Health and Human Services as well as a complaint filed by a witness Leslie

Roper. Leslie Roper reported to the DPHHS that there were unsecured firearms in

the MINOR residence, a handgun and an AR-15 style rifle. Leslie Roper reported

to DPHHS that they believed MINOR possibly had a medical marijuana card and

that by Leslie Roper's interactions while living with the MINOR family for two

months, having moved out two (2) days prior to the complaint filed on March 29,

2019, with DPHHS, MINOR abuses the children, has marijuana in the open for all

children to access.

10.      Leslie Roper reported that the abuse was in many forms to include

MINOR not allowing the children to leave their bedroom at night, not even to use

the bathroom, or they would be beaten. Roper advised that the 12 year old is then

afraid to leave the room so he urinates in the bedroom on the floor and then

MINOR beats the child. Roper reported that MINOR threatens to spank the children with an electric fly swatter. Roper reported that the children are ordered to do all the house work and that when MINOR tells the 10 year old daughter to go get MINOR something out of the kitchen, and the child does not do it, the MINORS beat the child. Roper reported that about one week prior to Roper making the DPHHS complaint, Roper observed MINOR hand the 12 year old son the marijuana pipe and told him to smoke it and "calm the fuck down."

11.    Upon arrival of the Deputies, MINOR reportedly answered the door after several minutes of the Deputies knocking and identifying themselves. Deputies reported that MINOR opened the door abruptly and stated "why are you motherfuckers here?" Deputies advised that MINOR immediately began recording the contact, this recording was places on youtube.com with the heading "Yellowstone county sheriffs (tyrants)". During the contact MINOR was uncooperative and advised the Deputies that they were trespassing on private property and that even the landlord of the property did not want the Deputies on the property. Deputies later spoke with the landlord of the trailer park and were advised that MINOR'S statement was a lie and that the landlord never advised of Law Enforcement not being welcome on the property.

12.    When the Deputies advised that they were there on a reported child abuse case and the Deputies believed one of the children called it in, the children

6

could be heard pleading that they didn't call as they were crying.  Deputies left the

MINOR residence not being able to properly investigate the complaint.

13.     On April 17, 2019, Deputy Poe was called to respond back to the

MINOR residence on a report of MINOR having sold marijuana to a juvenile

friend of Jacee Reinhart's son.  Reinhart phoned in the complaint advising that her

12 year old son had advised her that on April 13, 2019, her sons 12 year old friend

had purchased $ 10.00 of marijuana from a neighbor at 1385 HWY 87 East.

Deputy Poe began to investigate and learned that the neighbor was MINOR, after

speaking with the children was able to determine that it was MINOR who had sold

the marijuana to the child.

14.     Deputy Poe made contact with Roper, the original caller for the

DPHHS report.  Deputy Poe advised that due to the contact and report filed by

Reinhart, Deputy Poe felt it necessary to conduct further follow up on MINOR'S

actions.  Deputy Poe advised that upon contacting Roper, Roper advised that

MINOR had a large revolver with a 6-8 inch barrel and wooden handle as well as

an AR-15 rifle that is all black and has some sort of chest harness, possibly a single

point sling, with a full extended magazine, possibly 30 rounds, and ammunition for

the firearms.  Roper advised that MINOR had purchased the two firearms from

MINOR'S cousin, John Wick, with MINOR'S 2019 income tax return.

15. Roper described some of the child abuse to include MINOR striking April MINOR'S son with MINOR'S cane. Roper advised that MINOR regularly calls the children derogatory names. Roper advised that the two children are home schooled as they were pulled out of school and that the male child has some possible mental deficiencies and that was why MINOR pulled him out of school. Roper advised that although she had only lived with the MINOR'S for about two (2) months, Roper has known the MINOR'S for about 10 years.

16. Roper advised Deputy Poe that Christopher MINOR is wanted out of CA for a felony child abuse warrant and that was why MINOR moved out of CA to TN. Roper advised that she moved out of the MINOR residence because MINOR had threatened her and stated to Roper "you need to pack up and leave before I go get what I'm not supposed to have." Roper believed that MINOR was referring to the firearms. Roper advised that she moved out and went back to TN where she felt she was safe so that she could report the incidents to Law Enforcement. Roper advised that the last time Roper had observed the firearms in the MINOR residence was on March 29, 2019, when MINOR had made the aforementioned threat.

17. On May 1, 2019, ATF Task Force Officer (TFO) Stephen Feuerstein, made phone contact with Reinhart. Reinhart affirmed her report of her juvenile son's friend using the $ 5.00 that Reinhart had given to her son and the other

8

juvenile, to purchase marijuana from the neighbor later identified as MINOR.

Reinhart advised that her son had also stated that his friend that purchased the

marijuana had also smoked marijuana in the presence of Reinhart's son.  Reinhart

went to her son and questioned him with TFO Feuerstein on the phone about

observing the friend smoke marijuana with MINOR and Reinhart's son confirmed

that he did observe the incident.

18.     ATF TFO Feuerstein began to investigate the incidents and the

MINOR'S.  On April 30, 2019, TFO Feuerstein phoned the Montgomery County

TN Sheriff's Office and confirmed the NCIC listing of a valid felony arrest warrant

for Christopher Lee MINOR, obtaining a copy of the warrant.  TFO Feuerstein also

made contact with the Yuba City Police Department, CA, and confirmed the felony

arrest warrant for Christopher Lee MINOR, obtaining a copy of the warrant.

19.     TFO Feuerstein during the review of MINOR'S criminal history for

which the arrest warrants were displayed, noted that MINOR was convicted of

Battery of spouse, a misdemeanor crime of domestic violence, in 2006 in Yuba

City, CA.  In 2008, MINOR was convicted of violating a court order to prevent

domestic violence for which the state of CA noted MINOR did not complete the

sentence of supervision successfully.  Court comment in the NCIC states condition

of probation-firearm restriction.

20.     On April 30, 2019, TFO Feuerstein and ATF SA Cory Kambak,

conducted surveillance of the MINOR residence.  During the surveillance

photographs were taken of the residence and no activity by any subject inside the

residence was observed.  Two vehicles parked in front of the residence were

observed with one being registered to April MINOR and the other being registered

currently to John Wick.  The vehicle registered to John Wick matches that of the

description given to Deputy Poe by Roper as the vehicle MINOR had purchased

from Wick.

## CONCLUSION

Based upon the information above, I believe that probable cause exists for the

search of the described residence rented/leased by Christopher Lee MINOR and

April MINOR, and that the residence contains evidence of the unlawful possession

of firearms and ammunition under 18 U.S.C. § 922(g) (2), 18 USC 922 (g) (9), 18

USC 922 (g) (3), and possession of narcotics or controlled substances including

marijuana, methamphetamine, cocaine, heroin, or opiates as defined in 21 U.S.C. §

802.

DATED this ___ day of May, 2019.

_____
Stephen Feuerstein
Task Force Officer, ATF

Subscribed and sworn to before me on the ___ , May, 2019.

_____
Timothy J. Cavan
UNITED STATES MAGISTRATE